UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIPLE CANOPY, INC.,

    Petitioner,

v.

UGSOA LOCAL 206 UNION,

    Respondent.
_____/

Case No. 1:22-cv-659

Hon. Hala Y. Jarbou

## OPINION

Triple Canopy, Inc. and UGSOA Local 206 Union ("the Union") are parties to a Collective Bargaining Agreement ("CBA"). Triple Canopy and the Union arbitrated a dispute concerning the termination of a Triple Canopy employee, John Letts. On May 5, 2022, the Arbitrator entered an award in favor of the Union. Before the Court is Triple Canopy's petition to vacate the arbitration award (ECF No. 1). Also before the Court is the Union's cross motion to confirm the arbitration award (ECF No. 12). For the reasons stated below, the Court will confirm the arbitration award.

## I. FACTUAL BACKGROUND

### A. Letts's Termination

Triple Canopy is an outside provider of Protective Security Officers ("PSOs") for federal buildings located throughout the state of Michigan. (Arb. Award, ECF No. 1-1, PageID.13.)[1] The Union represents approximately 65 PSOs in a CBA with Triple Canopy. (*Id.*) The PSOs perform

---

[1] The Court must accept the Arbitrator's findings of fact as true. *NetJets Aviation, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 486 F.3d 935, 937 (6th Cir. 2007) (quoting *Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

guard duties at various federal buildings under the supervision of the Federal Protective Service ("FPS")—a federal law enforcement agency. (*Id.*)

Triple Canopy hired Letts as a PSO in 2016. (*Id.*, PageID.14.) Letts previously worked in law enforcement and security for several decades. (*Id.*) At the time of the events in question, Letts was a PSO at the Hart-Doyle-Inouye Federal Center located in Battle Creek, Michigan. (*Id.*, PageID.13.) There, he was regularly stationed at the East Manchester Gate guard booth. (*Id.*, PageID.14.)

On November 24, 2020, FPS Commander Chad Fraley allegedly observed Letts sleeping inside the East Manchester Gate guard booth. (*Id.*) Commander Fraley filed a "Contractor Deficiency Notification" with Triple Canopy. (*Id.*) Letts was removed from his post duty within the hour. (*Id.*) Lieutenant Todd A. Underwood, a Triple Canopy employee, investigated the alleged sleeping incident and issued a report on December 2, 2020, with the following statements from Commander Fraley and Letts recounting their versions of the events:

Statement from FPS Commander Chad Fraley:

…

On November 24, 2020 at approximately 3:00pm, I Area Commander Chad Fraley was returning to the HDI Federal center (M10501BC) and pulled up to the guard booth in my police vehicle on Manchester Rd. When I pulled up to the guard booth to show my government ID, no PSO opened the door or came out to verify it. I looked into the guard booth window and observed PSO John Letts sitting in a chair with his head leaning back on the glass and his eyes closed. I sat there observing him for approximately two (2) minutes and at one point witnessed his head bob up and down. PSO Letts arose after several minutes and came to the door. I asked him if he was ok and [he] stated yes with a frown on his face. I told PSO Letts I was going to call the supervisor to come talk to him or relieve him of his post. I spoke [sic] to PSO Lt. Underwood by phone and briefed him on the incident. Lt. Underwood came out to the booth immediately. I took no further action.

Statement from PSO John Letts:

. . .

> On Tuesday, November 24th 2020 on or about 1500 hours PSO John Letts was working the Battle Creek – HDI at the 30 G post, commonly referred to as the Manchester Gate.
>
> Officer was at the guard post performing his duties when Commander Fraley came driving through. Officer was sitting down and stood up making eye contact with him through the guard shack door as he was sitting in his patrol car with his window rolled down. Officer made eye contact with him and opened the guard shack door and he asked "Are you alright". Officer responded, "yes", and he drove through and parked his vehicle.

(*Id*, PageID.15-16.)

On January 14, 2021, Triple Canopy terminated Letts for sleeping on duty. (*Id.*, PageID.16.) The Union filed a grievance on behalf of Letts on January 26, 2021. (*Id.*) Article 8 of the CBA, titled "Grievance Procedure," provides for resolution of grievances through arbitration. (CBA, ECF No. 1-2, PageID.35.) After completing the steps of the grievance procedure, the Union appealed to the Arbitrator. (Arb. Award, PageID.16.) The parties stipulated that the Arbitrator would answer the following questions: "Did Triple Canopy have 'just cause' to terminate the Grievant? If not, what shall be the remedy?" (*Id.*)

### B. The Arbitrator's Award

The Arbitrator began his analysis by "emphasizing that this dispute is centered on an underlying question as to whether or not the Grievant was in fact 'Sleeping On Duty[.]'" (*Id.*, PageID.17.) After making factual findings following three days of arbitration, the Arbitrator concluded that Triple Canopy "was not able to firmly establish by a preponderance of the evidence that [Letts] was in fact 'Sleeping on Duty' at the time in question." (*Id.*, PageID.22.) Rather, the facts suggested that Letts was being inattentive to his duties and "looking down at the floor lost in thought." (*Id.*, PageID.22-23.) The Arbitrator also pointed out that Lieutenant Underwood, who investigated the incident and issued a report on behalf of Triple Canopy, testified that "[t]he

3

summary . . . [of his] report was that PSO Letts was inattentive to his duties" and that he "was not able to truthfully say that . . . [Letts] was actually sleeping." (*Id.*, PageID.22.)

Article 7 of the CBA states that employees may only be disciplined for just cause. (CBA, PageID.34.) Because Triple Canopy could not establish by a preponderance of the evidence that Letts was sleeping on duty, the Arbitrator found that Triple Canopy "did not meet its burden to prove that [Letts] was terminated for 'just cause' as provided for in the CBA." (Arb. Award, PageID.25.) The Arbitrator ordered that Letts be reinstated to his former PSO position. (*Id.*) However, because Letts was found to have been inattentive on duty in violation of employee policy, the Arbitrator also ordered a 30-day disciplinary suspension. (*Id.*, PageID.25-26.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the Court's review of an arbitration award. The FAA "expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citing 9 U.S.C. § 9). Thus, "'[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) (quoting *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008)). "'Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error.'" *Id.* (quoting *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 422 F.3d 471, 476 (6th Cir. 2006)).

A party seeking to vacate an arbitration award must look to Section 10 of the FAA, which provides the "'exclusive regime[] for the review provided by the [FAA].'" *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008)). Under Section 10, a court may vacate an arbitration award "where

the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). As the Sixth Circuit has explained,

> [a] party seeking relief under that provision bears a heavy burden. It is not enough for [the party] to show that the [arbitrator] committed an error—or even a serious error. Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.

*Gunasekera v. War Mem'l Hosp., Inc.*, 841 F. App'x 843, 846 (6th Cir. 2021) (internal citations and quotation marks omitted). However, the "court's review is not toothless when an arbitrator's award disregards the explicit provisions of the contract." *Farley v. Eaton Corp.*, 701 F. App'x 481, 485-86 (6th Cir. 2017) (internal quotation marks omitted).

### III. ANALYSIS

Triple Canopy argues that the Arbitrator exceeded the scope of his authority by arbitrating a dispute that was non-arbitrable under the CBA and rendering an award that has no basis in the CBA. Specifically, Triple Canopy argues that the Arbitrator disregarded explicit contractual provisions in Sections 8 and 24 of the CBA that limit his authority. Article 8 § 5 states, in relevant part, that

> [n]o grievance regarding a dispute as to the interpretation of a Wage Determination, the interpretation of the Contract (as defined on page 1 of this Agreement), the Employer's adherence to the Contract or the Employer's adherence to a written request of the Government shall be processed to Step Four since those matters are not arbitral and no arbitral and no arbitrator shall have jurisdiction over such matters.

(CBA, PageID.36.) Further, Article 8 § 9 states that

> [t]he following matters are not arbitral and the arbitrator shall have no power and no jurisdiction to:

5

> . . .
>
> (c) Consider any matter or substitute his/her judgment for that of the Government's regarding a security clearance/suitability determination or requirement of the Government official, the contracting officer or other official of the Government.

(*Id.*) Article 24 § 1 states, in relevant part, that

> the administration of the terms of this Agreement are subject to the wishes of the Government. The client may supersede any understanding regarding post assignments, hours, shifts, credentials, qualifications, etc., as the client deems to be in the interest of the Government.

(*Id.*, PageID.49.) Finally, Article 24 § 3 states that

> [a]ny employee removed from the contract as a result of Client directive, shall have no recourse for such action under the grievance or arbitration section of this Agreement.

(*Id.*)

According to Triple Canopy, the Arbitrator exceeded the scope of his authority by arbitrating a dispute concerning Triple Canopy's adherence to the Government's written request and could not have arguably construed the CBA when he substituted his judgment for that of the Government regarding Letts's employment.

The Union disagrees. It argues that Triple Canopy constructively waived such arguments by not raising them before the Arbitrator. Even if the Court finds that Triple Canopy did not waive its arguments, the Union argues that the award should be confirmed because the Arbitrator still arguably construed and applied the CBA.

### A. Waiver

"Generally, arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in a district court." *Armco Emps. Indep. Fed'n, Inc. v. AK Steel Corp.*, 149 F. App'x 347, 352 (6th Cir. 2005) (collecting cases); *see also Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 395 (6th Cir. 2019) (citing *Armco*); *Chippewa Cnty. War*

6

*Mem'l Hosp. v. Mich. Nurses Ass'n*, No. 2:16-cv-1192, 2017 WL 3456297, at *4 (W.D. Mich. Aug. 11, 2017) (same).  However, employers "should not be placed in a position of having to anticipate every possible argument at issue that might influence the Arbitrator's award, especially those issues that [the employer] did not know it needed to defend and those that conflict with the plain meaning of the CBA."  *Id.* at 353 (citing *United Food & Comm. Workers v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1344-45 (7th Cir. 1991)).

Triple Canopy may or may not have waived its arguments; but, at the very least, Triple Canopy surely made conflicting statements to the Arbitrator.  The Arbitrator began the arbitration by stating on the record that "the parties just moments ago agreed this matter is properly in arbitration."  (Hr'g Tr. 3, ECF No. 22-1.)[2]  Furthermore, in both its opening argument and post-hearing brief, Triple Canopy framed the arbitration as deciding whether Letts was sleeping on duty.  (*See* Hr'g Tr. 3 ("This is a very simple case. At issue is whether or not the grievant, Mr. Letts committed the terminal offense of sleeping while on duty."); Triple Canopy's Post-Hr'g Br., ECF No. 13-1, PageID.110 ("This is a straightforward case. At issue is a credibility determination whether Grievant John Letts ("Letts") committed the terminable offense of sleeping on duty.").)  Indeed, the Arbitrator's award followed Triple Canopy's framing of the issue by reiterating the stipulated questions: "Did Triple Canopy have 'just cause' to terminate the Grievant? If not, what shall be the remedy?" and subsequently analyzing whether Triple Canopy had just cause to terminate Letts.  (Arb. Award, PageID.16.)

However, Triple Canopy also raised its present arguments in a perfunctory manner before the Arbitrator.  In its opening statement Triple Canopy stated that

> Article 7.2 of the CBA states that no employee who has completed the probationary period shall be disciplined without just-cause unless removed from working under

---

[2] Excerpts of the transcript can also be found at ECF Nos. 23-1 and 27-1.

7

> the contract by Triple Canopy's clients, which of course is FPS.  Article 7.3 of the CBA states that all suspensions and dismissals resulting from an actionable order of the government, in this case FPS, are not subject to the grievance and arbitration procedure.
>
> . . .
>
> Commander Fraley and FPS filed what is called a Deficient Post Inspection, putting Triple Canopy on notice of a contract deficiency and requiring corrective action.

(Hr'g Tr. 6-7.)  In its post-hearing brief under the "Relevant CBA Provisions" section, Triple Canopy quoted Article 8 § 9 and Article 24 in full.  (Triple Canopy's Post-Hr'g Br., PageID.113.)  In its facts section, it also indicated that FPS issued a "Contractor Deficiency Notification" advising that Fraley had observed Letts sleeping on duty.  (*Id.*, PageID.116.)  Finally, in its analysis, Triple Canopy noted that

> The CBA provides that the arbitrator had no power to "substitute his/her judgment for that of the Government's regarding a security clearance/suitability determination or requirement of the Government Official, the contracting officer or other official of the Government." Jt. Ex. 1, Art. 8, Section 9(c) at p. 4. . . . In sum, Fraley's judgment regarding Letts' conduct on November 24 must stand.

(*Id.*, PageID.125.)

Thus, whether or not Triple Canopy waived its argument, it clearly made conflicting statements to the Arbitrator about both the validity and scope of the arbitration.  If Triple Canopy believed that the Arbitrator had no authority to adjudicate the matter, then it should have raised such an argument to the Arbitrator rather than agreeing that the matter was properly in arbitration.  And, if Triple Canopy believed that Commander Fraley's judgment was binding on the Arbitrator irrespective of the testimony heard during the hearing, then it should not have stipulated to the Arbitrator answering whether Triple Canopy had "just cause" or called the arbitration a "credibility determination."  (Arb. Award, PageID.16; Triple Canopy's Post-Hr'g Br., PageID.110.)

8

## B. Merits

Regardless of whether Triple Canopy waived its arguments, the Court will affirm the Arbitrator's award. When reviewing an arbitration award, the Court must ask "(1) whether the arbitrator acted 'outside his authority' by resolving a dispute not committed to arbitration by agreement; and (2) in resolving legal or factual disputes, whether the arbitrator was 'arguably construing or applying the contract.'" *Manville v. Int'l Bhd. of Teamsters, Local 20*, 784 F. App'x 425, 428 (6th Cir. 2019) (quoting *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc)).

With respect to the first inquiry, "[a]n arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Mich. Family*, 475 F.3d at 756. "Perhaps anticipating that clever parties would attempt to recast a disagreement with an arbitrator's decision as a claim that he acted outside of his authority, *Michigan Family* 'severely curtailed the scope of authority concept.'" *Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 901 (6th Cir. 2012) (quoting *Truck Drivers Loc. No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 217 (6th Cir. 2008)). "*Michigan Family* asks a broad, high-level question about the arbitrator's scope of authority: is this the type of dispute committed to arbitration?" *Manville*, 784 F. App'x at 429.

The Arbitrator did not exceed the scope of his authority by arbitrating this dispute. As an initial matter, Triple Canopy conceded that the matter was properly before the Arbitrator. (Hr'g Tr. 3.) Moreover, the CBA commits this type of dispute to arbitration. Article 7 reads:

> **Section 1.** Employees shall be subject to discipline or discharge for just cause and the Company agrees to utilize a progressive disciplinary policy.
>
> **Section 2.** No employee who has completed the probationary period shall be disciplined without just cause unless removed from working under the contract by

> the Client, or if the employee's credentials are denied or withdrawn by the Client. The Employer will provide the Union with a copy of any such directive, if available and authorized for release by the Client. If such directive is not available, the Employer will inform the Union in writing or email of the facts giving rise to such directive.
>
> **Section 3.** All suspensions and dismissals of non-probationary employees made solely by the Employer (i.e., not due to an action or order of the Government) will be subject to the Grievance & Arbitration Procedure set forth in this Agreement . . . .

(CBA, PageID.34.)

Triple Canopy argues that because it terminated Letts under FPS's directive, the dispute is non-arbitrable pursuant to Articles 7, 8, and 24. The Court finds this argument unpersuasive. The CBA does not define what qualifies as a client "directive" as stated in Articles 7 and 24 or an "action or order of the Government" as stated in Article 7. It also does not define a "written request of the Government" or "a security clearance/suitability determination or requirement of the Government Official, the contracting officer or other official of the Government" as stated in Article 8. It appears that certain Sections of Articles 7, 8, and 24 attempt to prevent Triple Canopy from having to arbitrate disciplinary actions that FPS, its Government client, orders it to take. But the CBA does not define any of the numerous terms it uses to articulate this point. Accordingly, it is unclear whether the "Contractor Deficiency Notification" filed by Commander Fraley suffices to make Letts's grievance non-arbitrable. Indeed, the word "notification" itself suggests that Commander Fraley intended to inform Triple Canopy of Letts's deficient performance, not to order Triple Canopy to terminate him.

The evidence submitted to the Court further suggests that Commander Fraley's "Contractor Deficiency Notification" was not an order or directive from FPS requiring Triple Canopy to terminate Letts's employment. During the arbitration hearing, Commander Fraley testified that he does not have the authority to prevent Letts from working. (Hr'g Tr. 191.) Rather, "[t]his is

10

something that is handled at the COR level, the Contract Office Level" by an individual named Angela Varlow. (*Id.* at 190-192.) And, as far as Commander Fraley is aware, Ms. Varlow did not ban Letts from working as a PSO. (*Id.* at 192.) Rather, as Triple Canopy conceded, it only "received a directive from the Government that Letts is not to be assigned a Post until at least the final outcome of the investigation is completed." (*Id.* at 190.) The Court is not aware of any directive from FPS actually ordering Triple Canopy to terminate Letts. Accordingly, the Arbitrator did not exceed the scope of his authority by analyzing whether Triple Canopy had just cause to terminate Letts under the CBA.

With respect to the second inquiry, the Arbitrator arguably construed or applied the CBA. *Michigan Family* instructs the Court to analyze the Arbitrator's award for both form and substance. "Matters of form focus on whether the arbitrator was engaged in the act of interpretation." *Bhd. of Locomotive Eng'rs & Trainmen*, 700 F.3d at 905. The Sixth Circuit in *Michigan Family* noted that an "arbitrator's ten-page opinion has all the hallmarks of interpretation" because it "refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does he say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Mich. Family.*, 475 F.3d at 754.

Similarly, here, the Arbitrator engaged in a good-faith analysis of just cause. The Arbitrator noted that Triple Canopy and the Union are both signatories to the CBA and cited it as an exhibit. (Arb. Award, PageID.13.) He summarized the parties' positions as to why just cause was or was not present, and then proceeded to make ten factual findings that relate to just cause. (*Id.*, PageID.16-17.) The Arbitrator concluded that Triple Canopy did not prove by a preponderance of the evidence that Letts was sleeping on duty. (*Id.*, PageID.25.) In support of this conclusion, the Arbitrator noted that Lieutenant Underwood—a Triple Canopy employee who

investigated the incident—found that Letts was inattentive but not sleeping. (*Id.*, PageID.22.) He also referenced another arbitration between the two parties, which Triple Canopy cited in its post-arbitration brief, where the Arbitrator considered whether any effort was necessary to arouse the employee or get his attention. (*Id.*, PageID.23.) In short, the Arbitrator gathered evidence, analyzed, and answered the exact questions the parties submitted to arbitration: "Did Triple Canopy have 'just cause' to terminate the Grievant? If not, what shall be the remedy?" (*Id.*, PageID.16.) The fact that the Arbitrator did not question the arbitrability of the matter after the parties had agreed that it was arbitrable or address Triple Canopy's tangential arguments under Articles 7, 8 and 24 does not mean he was not engaged in interpretation. There is nothing to suggest that the Arbitrator was doing anything other than trying to reach a good-faith interpretation of just cause in the CBA.

The substance inquiry focuses on whether an arbitrator's decision was "so ignorant of the contract's plain language" such that it "make[s] implausible any contention that the arbitrator was construing the contract." *Mich. Family*, 475 F.3d at 753 (internal citations and quotation marks omitted). Put differently, "[a]n interpretation of a contract [] could be so untethered to the terms of the agreement . . . that it would cast doubt on whether the arbitrator was indeed engaged in interpretation." *Id.* (internal citations and quotation marks omitted); *see also Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Transp. Div. v. Port Auth. Trans-Hudson Corp.*, 817 F. App'x 135, 137 (6th Cir. 2020) (quoting *Mich. Family*). But this will be the "rare case" because "arbitrators may make improvident, even silly decisions without justifying a reversal[.]" *Zeon Chemicals, L.P. v. United Food & Com. Workers, Local 72D*, 949 F.3d 980, 983 (6th Cir. 2020) (internal citation and quotation marks omitted). The Court's "review of the arbitrator's decision looks to whether he was arguably construing or applying the contract, and not to the quality of his

12

reasoning or whether his interpretation was the best one.  After all, arbitrators have no obligation to the court to give their reasons for an award[.]" *Browning-Ferris Indus. of Ohio, Inc. v. Int'l Bhd. of Teamsters, Loc. Union No. 20*, No. 20-4073, 2022 WL 684579, at *6 (6th Cir. Mar. 8, 2022) (internal citations and quotation marks omitted).

As previously explained, there is no clear indication in the CBA that Commander Fraley's "Contractor Deficiency Notification" required Triple Canopy to terminate Letts such that he could not proceed through the grievance and arbitration process.  Triple Canopy also argues that the Arbitrator improperly substituted his judgment for that of Commander Fraley's.  Article 8 Section 9 states that the Arbitrator "shall have no power and no jurisdiction to . . . substitute his/her judgment for that of the Government's regarding a security clearance/suitability determination or requirement of the Government Official, the contracting officer or other official of the Government."  (CBA, PageID.36.)  But, again, the CBA does not define "security clearance/suitability determination" or "requirement" of a government official.  The plain language of the CBA does not indicate that Commander Fraley's "Contractor Deficiency Notification" required the Arbitrator to accept his version of the facts as true.  Accordingly, the Arbitrator's analysis was not so ignorant of the CBA's plain language such that he failed to engage in any interpretation at all.

In sum, the Arbitrator neither acted outside the scope of his authority nor failed to arguably construe or apply the CBA.  The deferential standard for judicial review of arbitral decisions "is a view that respects the parties' decision to hire their own judges to resolve their disputes, a view that respects the finality clause in most arbitration agreements, and a view whose imperfections can be remedied by selecting better arbitrators." *Mich. Family*, 475 F.3d at 753-54 (internal citation omitted).  The Court must defer to the Arbitrator's decision "because, for better or worse,

the parties 'bargained for an arbitrator's interpretation of the contract, not a federal judge's.'" *Zeon Chemicals*, 949 F.3d at 983 (quoting *Econ. Linen & Towel Serv., Inc. v. Int'l Bhd. of Teamsters, Teamsters Loc. Union 637*, 917 F.3d 512, 513 (6th Cir. 2019)).

## IV. CONCLUSION

For the reasons stated above, the Court will confirm the Arbitrator's award.  Accordingly, Triple Canopy's petition to vacate the arbitration award (ECF No. 1) will be denied, and the Union's cross motion to confirm the arbitration award (ECF No. 12) will be granted.

Dated: May 19, 2023                                    /s/ Hala Y. Jarbou
                                                                       HALA Y. JARBOU
                                                                       CHIEF UNITED STATES DISTRICT JUDGE